UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN KASPERZYK, | No. C-13-3358 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT LUCASFILM LTD.'S AND DEFENDANT LETTERMAN DIGITAL ARTS CENTER LTD.'S MOTIONS TO DISMISS THIRD AMENDED COMPLAINT** |
| SHETLER SECURITY SERVICES, INC., *et al.*, | |
| Defendants. | |
| _____/ | **(Docket Nos. 54-55)** |

Plaintiff Jordan Kasperzyk filed suit against defendants Shetler Security Services, Inc. ("Shetler"); Michael Shetler; Lucasfilm Ltd. ("Lucasfilm"); and Letterman Digital Arts Center Ltd. ("Letterman"). The current operative complaint is the third amended complaint ("TAC"), containing twelve claims. Pending before the Court are Defendant Lucasfilm's and Defendant Letterman's motions to dismiss claim eleven for negligence in hiring, supervision, or retention as well as claim twelve for civil conspiracy. *See* Docket Nos. 54, 55.

Having considered the parties' briefs as well as the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part the motions to dismiss.

### I.   FACTUAL & PROCEDURAL BACKGROUND

The factual background underlying these actions are set forth in this Court's prior opinions, familiarity with which is presumed. *See* Docket Nos. 36, 48. In addition to those facts, Mr. Kasperzyk alleges in the TAC as follows.

Mr. Kasperzyk is a licensed security guard and in 2008, he was hired by Advanced-Tech to provide security at Lucasfilm's Letterman Digital Arts Center ("Center"). *See* TAC ¶ 36. As a new

hire with Advanced-Tech, Mr. Kasperzyk was also required to join a local union.  *See* TAC ¶ 39.  In January 2010, while working for Advanced-Tech, Mr. Kasperzyk hurt his back "when a motorist whose car he had ticketed for over parking [at the Center] struck him with his car."  TAC ¶ 48.  He was able to return to work but "on a limited basis, with medically prescribed work restrictions.  These work restrictions prohibited him from any heavy lifting, and required a post that would permit him to vary his position by alternately sitting or standing occasionally for several minutes at a time to relieve the stress on his back."  TAC ¶ 50.

In or about May 2010, Advanced-Tech lost its contract to provide security, with Shetler Security Services ("Shetler") being hired in Advanced-Tech's place.  *See* TAC ¶¶ 10, 51.  Advanced-Tech employees were told that Advanced-Tech would be leaving but that "anyone who wished to remain at the Center and work for Shetler could do so by simply signing up."  TAC ¶ 51.  Mr. Kasperzyk signed up to become an employee of Shetler, in part to protect his housing situation with the Presidio Trust, which required employment with an employer on the Presidio.  *See* TAC ¶ 51.  The independent contract agreement for security services was ultimately entered into between Shetler and Letterman.  *See* TAC ¶ 55; *see also* Def. Lucasfilm RJN to first Motion to Dismiss, Docket No. 23-2.  The contract included a provision stating that:

> Company reserves the right to request that Contractor *remove and replace* any of the Contractor's personnel assigned to perform the Services.  In such event, Contractor shall review the circumstances behind Company's request and determine whether to replace such personnel with properly qualified personnel as soon as it is reasonably practical or to offer Company alternative actions.

Def. Lucasfilm RJN to first Motion to Dismiss the FAC, Docket No. 23-2 ¶ 20 (emphasis added).  The independent contract agreement also contained an Exhibit B (Scope of Services) stating that "'[t]he Company shall not take any action contrary to any applicable law, rule, regulation or order prohibiting discrimination against employees . . . on the basis of . . . disability . . . or contrary to any other provision of law or this Agreement.'"  TAC ¶ 56; *see also* Def. Lucasfilm RJN to first Motion to Dismiss the FAC, Docket No. 23-2 Ex. B ¶ 8(b).

///

///

2

When Shetler took over security, it signed not only a contract with Letterman but also a contract with the local union, Service Employees International Union ("SEIU"). In addition to an anti-discrimination clause, the Union contract included a provision (Article 27.2) that stated:

> If a customer demands that the Company remove an employee from further employment at a location, the Company shall have the right to comply with such demand. However, unless the Company has cause to discharge the employee, the company will use its best efforts to place him/her in another job in the same County not to exceed ten (10) miles from the job site from which he or she was removed, and schedule said employee with no loss of wages, seniority or benefits and with the same shift.

TAC ¶ 41.

Notwithstanding the contract was between Shetler and Letterman, Mr. Anders Noyes, the Lucasfilm Director of Security, had a close relationship with Shetler and exercised a great deal of control over security personnel. *See* TAC ¶ 20. Specifically, Mr. Kasperzyk alleges the following:

> 21. . . . Mr. Noyes, in his capacity as Director of Security for Lucasfilms:
>
> • Required that all applications for employment by the security contractor be forwarded to him for his review . . . No-one [sic] was hired as a security officer without Mr. Noyes approval.
>
> • Required that the security contractor's Account Manager and Lead Supervisor attend a twice weekly meetings [sic] in Mr. Noyes' office. The purpose of the meeting was to instruct the security personnel of up-coming events on the campus . . . and to review any personnel complaints/issues that had arisen between meetings.
>
> • Required that whenever a security employee left, either through termination or resignation[,] Mr. Noyes was to be informed. . . No security officer working at [the Center] resigned or was terminated without Mr. Noyes knowledge.
>
> • In addition to the twice weekly meetings in his office, Mr. Noyes also attended the weekly security supervisors meetings where personnel complaints were aired and discussed among the supervisors for legitimacy, seriousness[,] and response.
>
> • Mr. Noyes was also aware of the clause in the Collective Bargaining Agreement . . . that permitted

3

>
> the 'client' to possess the power to request/require removal of a security officer.
>
> 54. Shetler's close ties with Lucasfilms [sic] Director of Security Anders Noyes included letting him use the [Shetler leased office space onsite] and address for his personal business.

TAC ¶¶ 21, 54.

Mr. Kasperzyk made several complaints to Shetler regarding racial and religious discrimination that had occurred in his presence during his employment. On January 11, 2010, Mr. Kasperzyk made a verbal complaint to a lead supervisor that a security officer, Mr. Bob Real, called another security officer, Mr. Idris (who is African-American and Muslim), a "god-damned terrorist" and said "[y]ou can't trust Al Qaeda." TAC ¶¶ 18, 26. On January 27, 2010, Mr. Kasperzyk filed a written incident report regarding the racial and religious discriminatory comments directed towards Mr. Idris. *See* TAC ¶ 28.

In November 2010, Mr. Kasperzyk was presented with a letter from Shetler that stated his current posting was being eliminated at the behest of the client because "[y]ou and we [sic]" were not able to identify a posting where Mr. Kasperzyk could perform the essential job functions, either with or without reasonable accommodation, and that Shetler was therefore terminating his employment. TAC ¶ 61. According to Mr. Kasperzyk, nothing stated in the letter was actually true. *See* TAC ¶ 62. The termination letter contained no reference to Lucasfilm or Letterman having any complaints about Mr. Kasperzyk's job performance. *See* TAC ¶ 61. According to Mr. Kasperzyk, he had no prior knowledge that his post was being eliminated, had no prior discussions as to an alternate posting, his doctor did not place "the restriction on him alluded to" in the letter, and he had no subsequent discussions about possible postings for which he was qualified and for which an accommodation could be made to allow him to perform the essential job functions. TAC ¶ 62. Mr. Kasperzyk alleges there were "at least 10 job positions on the day shift alone that Mr. Kasperzyk could not only perform, but had trained others to perform, and he would have considered moving to either the swing shift or night shift to preserve his job and housing." TAC ¶ 62. Mr. Kasperzyk alleges his termination was in retaliation for his complaints to Shetler regarding "unlawful discrimination and harassment" directed towards Mr. Idris. TAC ¶ 104-05.

4

Mr. Kasperzyk subsequently contacted his SEIU representative Mr. Morales, to challenge the termination. *See* TAC ¶ 63. On November 10, 2010, Mr. Morales sent a letter to Shetler claiming Mr. Kasperzyk had been "unjustly terminated and requested reinstatement." TAC ¶ 63. On April 6, 2011, representatives from Shetler, Mr. Morales, and Mr. Kasperzyk attended an arbitration proceeding at the SEIU. *See* TAC ¶ 64. Mr. Kasperzyk alleges "having faced the evidence against Shetler, and realizing that Shetler would not prevail" Shetler offered him his job back prior to the conclusion of the proceeding and without a ruling from the arbitrator. TAC ¶ 64. Mr. Kasperzyk accepted and requested a letter verifying his employment so that he may show it to the Presidio Trust to maintain his housing. *See* TAC ¶ 64.

However, just two days later, Mr. Kasperzyk went to Shetler's office to obtain the letter and Mr. Dinnauer, Shetler Account Manager, informed Mr. Kasperzyk that "the client" did not want him back and he should vacate the premises. TAC ¶ 66. According to Mr. Kasperzyk, Mr. Anders Noyes was informed of Mr. Kasperzyk's re-hiring and Shetler "solicited [Mr. Noyes'] help in doing what they could not accomplish through arbitration, to wit, getting rid of Mr. Kasperzyk." TAC ¶ 65.

The TAC alleges that on April 7, 2011, the day after arbitration, Mr. Noyes sent an email to Michael Shetler, President of Shetler, that stated:

> Forgive any spelling error of Jordan's [Mr. Kasperzyk's] last name. It is my understanding that there was some thought about bringing Jordan back to my site at LDAC [the Center] or another Lucas facility. This is not acceptable. Jordan is not allowed to work on any of the Lucas sites, including but not limited to LDAC [the Center], Skywalker Ranch, or Big Rock Ranch. Thank you. Anders.

TAC ¶ 65 (email sent on April, 7, 2011 at 17:24:06). Mr. Kasperzyk alleges that Mr. Noyes had no reason to terminate Mr. Kasperzyk's employment. According to Mr. Kasperzyk, Mr. Noyes "was simply writing an email which someone at Shetler asked him to write – an email which would give Shetler the pretext to fire Plaintiff for the second and final time." TAC ¶ 65.

The Court previously granted Defendant Lucasfilm's motion to dismiss the first amended complaint as to the claim for negligence in hiring, supervision, or retention with leave to amend. *See* Order (Docket No. 36). Mr. Kasperzyk alleges the claim again, this time against both

5

Lucasfilm and Letterman. TAC ¶¶ 135-139.  Additionally, the Court has concluded in its Order granting in part and denying in part, Shetler's motion to dismiss, that the federal enclave doctrine precludes liability for claims that seek relief for economic harm, permitting only state law claims for emotional distress pursuant to 16 U.S.C. § 457.  *See* Order (Docket No. 48).  Accordingly, the Court will only permit Mr. Kasperzyk's claims to the extent they seek relief purely for emotional injury. *Id.* at 32.

## II. DISCUSSION

A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

B. Negligence in Hiring, Supervision, or Retention of Shetler (Claim Eleven)

According to both Lucasfilm and Letterman, claim eleven should be dismissed because, absent a peculiar risk, a negligence in hiring, supervision, or retention claim is not recognized under California law between the hirer of a contractor and the contractor's employee.  The Court previously agreed with this argument, granting Lucasfilm's motion to dismiss the first amended complaint with leave to amend.  *See* Docket No. 36.  Mr. Kasperzyk now alleges the claim against

both Lucasfilm and Letterman, but provides no new basis by which the Court should accept his claim.

California recognizes "the common law rule that an individual who hires an independent contractor generally is not liable for injuries to others caused by the contractor's negligence in performing the hired work." *Toland v. Sunland Hous. Grp., Inc.*, 18 Cal. 4th 253, 258 (1998). The peculiar risk doctrine provides an exception to the common law rule where "one injured by inherently dangerous work performed by a hired contractor can seek tort damages from the person who hired the contractor." *Id.*; *see also Privette v. Superior Court* (1993) 5 Cal.4th 689, 694 (1993). "The doctrine serves to ensure that innocent bystanders or neighboring landowners injured by the hired contractor's negligence will have a source of compensation even if the contractor turns out to be insolvent." *Toland*, 18 Cal. 4th at 256 (1998). However, as summarized in *Toland* and *Privette*, the California Supreme Court also held even when there is a peculiar risk, the hirer of the contractor is not liable to the contractor's employees, regardless of whether the peculiar risk theory is predicated on § 413 or § 416 of the Restatement Second of Torts.[1] *See generally id.* The Court reasoned:

> applying the peculiar risk doctrine to the independent contractor's employees would illogically and unfairly subject the hiring person, who did nothing to create the risk that caused the injury, to greater liability than that faced by the independent contractor whose negligence caused the employee's injury . . . "[T]he property owner should not have to pay for injuries caused by the contractor's negligent performance of the work when workers' compensation statutes already cover those injuries."

---

[1] Under section 413, a person who hires an independent contractor to do inherently dangerous work, but who fails to provide in the contract or in some other manner that special precautions be taken to avert the peculiar risks of that work, can be liable if the contractor's negligent performance of the work causes injury to others. Under section 416, even if the hiring person has provided for special precautions "in the contract or otherwise," the hiring person can nevertheless be liable if the contractor fails "to exercise reasonable care to take such precautions" and the contractor's performance of the work causes injury to others.

*Toland*, 18 Cal. 4th at 256-57.

7

*Id.* at 256 (citing *Privette*, 5 Cal.4th at 698-700).  Hence, under *Privette* and *Toland*, neither Letterman nor Lucasfilm can be liable as the hirer of Shetler for Shetler's alleged employment discrimination.

Nor can either defendant be held liable under a negligent hiring theory.  The California Supreme Court has held specifically that employees of an independent contractor are barred from asserting a negligent hiring, retention, or supervision claim against the hirer of the contractor.  *See Camargo v. Tjaarda Dairy*, 25 Cal. 4th 1235 (2001) (stating that, "an employee of a contractor should be barred from seeking recovery from the hirer under the theory of negligent hiring set forth in [Restatement (Second) Torts] section 411.").  Under *Camargo*, Mr. Kasperzyk is barred from asserting the eleventh cause of action, which expressly alleges a negligence in hiring, retention, or supervision claim, against either Letterman or Lucasfilm for their hiring of Shetler, the contractor who employed the Plaintiff.  *See* TAC ¶¶ 51, 53, 55, 135-139.

The Court therefore dismisses claim eleven against both Lucasfilm and Letterman without leave to amend because Mr. Kasperzyk has already been provided the opportunity to amend on this issue.

To the extent Mr. Kasperzyk now attempts to raise a claim not asserted in the eleventh cause of action – that Letterman and/or Lucasfilm retained control over Plaintiff's employment and affirmatively contributed to Plaintiff's injury, such a claim tracks another exception to a non-hirer's liability.  That exception was established in *Hooker v. Department of Transportation*, 27 Cal. 4th 198 (2002) and is based on Restatement of Torts section 414.[2]  In *Hooker,* the California Supreme Court held "that a hirer is liable to an employee of a contractor insofar as a hirer's exercise of retained control *affirmatively contributed* to the employee's injuries." *Id.* at 202 (emphasis in original).  A negligent exercise of retained control claim requires demonstration that the hirer of the

---

[2] Section 414 provides: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

*Hooker*, 27 Cal. 4th at 201.

contract both retained control of the workplace and that control affirmatively contributed to plaintiff's injury. *Id.*

Although the basic elements of *Hooker* may be satisfied by the factual allegations of the TAC, as Plaintiff conceded at the hearing, *Hooker* and Restatement Section 414 apply only where the employee suffered "physical injury." *Id.* at 206 (citing Restatement Section 414 "[o]ne who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others. . ."). No such injury is alleged in the instant case.

Accordingly, the eleventh cause of action is dismissed with prejudice.

C.   Civil Conspiracy (Claim Twelve)

Mr. Kasperzyk alleges a civil conspiracy claim against Defendants Lucasfilm and Letterman for "knowingly and willfully conspir[ing] and agree[ing] among themselves to deprive Plaintiff of employment in violation of FEHA and of Plaintiff's contractual rights." TAC ¶ 141. Mr. Kasperzyk also argues Lucasfilm and Letterman were "essentially indistinguishable as separate entities for the purposes of managing the security operation." Opposition to Lucasfilm at 6 (Docket No. 66); *see also* Opp'n to Letterman at 5 (Docket No. 67). Both Lucasfilm and Letterman argue they cannot be held liable for conspiring to discharge or terminate Mr. Kasperzyk, because neither were Mr. Kasperzyk's employer and owed no duty to him.

The California Supreme Court has held a civil "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994). "'The invocation of conspiracy does not alter this fundamental allocation of duty. . . [i]t allows tort recovery only against a party who already owes the duty and is not immune from liability based on applicable substantive tort law principles.'" *Weinbaum v. Goldfarb, Whitman & Cohen*, 46 Cal. App. 4th 1310, 1317 (1996) (citing *Applied*, 7 Cal. 4th at 1317.). California courts have also held "a third party who is not (and never was) the plaintiff's employer cannot be liable for conspiracy to wrongfully terminate the plaintiff's employment in violation of public policy." *Id.* at 1315. The critical question is whether Letterman and/or Lucasfilm may be deemed a joint employer of Kasperzyk.

In determining whether a defendant is a joint employer for the purposes of FEHA, California courts consider the "'totality of circumstances' that reflect upon the nature of the work relationship of the parties." *Vernon v. State*, 116 Cal. App. 4th 114, 124 (2004).  In applying California law, the Ninth Circuit found "[t]he key factor to consider in analyzing whether an entity is an employer is the right to control and direct the activities of the person rendering service, or the manner and method in which the work is performed." *Doe v. Wal–Mart,* 572 F.3d 677, 682 (9th Cir.2009) (citing *Serv. Employees Int'l Union v. County of L.A.*, 225 Cal.App.3d 761, 275 Cal.Rptr. 508, 513 (1990)). While there are other factors which may inform the question of employer status, *see Vernon*, 116 Cal.App.4th at 125,  the right to control the worker remains central.

The Court finds Mr. Kasperzyk's allegations in the TAC sufficient to state a plausible claim for civil conspiracy because the facts plausibly state a claim that Lucasfilm and Letterman are legally capable of committing the tort of wrongful termination as joint employers with Shetler. *See Weinbaum,* 46 Cal. App. 4th at 1315.  Mr. Kasperzyk alleges Mr. Noyes, had a significant degree of "immediate level of 'day-to-day' authority over employment decisions." *Wal-Mart Stores, Inc.*, 572 F.3d at 682.  Specifically, according to the TAC, Mr. Noyes regularly exercised control over employment decisions at the workplace.  For example, Mr. Noyes was regularly present on-site, reviewed and approved all applications for employment, attended regular meetings with Shetler employees and supervisors, provided instructions to security personnel of up-coming events on campus, reviewed personnel complaints and issues, and required notice of all terminations and resignations. *See* TAC ¶ 21.  Subsequent to Mr. Kasperzyk's arbitration in which his employment at the Letterman facility was reestablished, Mr. Noyes was the decision-maker who removed Mr. Kasperzyk from the worksite; Noyes wrote the email to the Shetler President stating that Kasperzyk's reinstatement was "not acceptable"  and that he was "not allowed to work at any of the Lucas sites, including but not limited to [Letterman] Center, Skywalker Ranch, or Big Rock Ranch." TAC ¶ 65.  According to Plaintiff, this was done in response to Shetler realizing they would not prevail at the arbitration, which led to Shetler recruiting Mr. Noyes to exercise his veto power, asserting his immediate control of day-to-day employment decisions.

Moreover, to the extent the TAC implies that Noyes acted on behalf of Letterman, Lettermen retained a substantial right of control over employment decisions. Under the Letterman-Shelter Independent Contractor Agreement, Letterman had right to terminate employees; the Agreement states that "Company [Letterman] reserves the right to request that Contractor [Shetler] *remove and replace* any of Contractor's personnel assigned to perform the Services." Def. Lucasfilm RJN to first Motion to Dismiss, Docket No. 23-2 ¶ 20, p. 15. That power was also reflected in the SEIU Contract:

> If a customer [*i.e.* Letterman] demands that the Company [Shetler] remove an employee from further employment at a location, the Company shall have the right to comply with such demand. However, unless the Company has cause to discharge the employee, the company will use its best efforts to place him/her in another job in the same County not to exceed ten (10) miles from the job site from which he or she was removed, and schedule said employee with no loss of wages, seniority or benefits and with the same shift.

TAC ¶ 41 (citing Article 27.2 of the Advanced-Tech and SEIU contract).

Accordingly, the Court finds Mr. Kasperzyk's allegations sufficient to state a claim for civil conspiracy. Through allegations of Mr. Noyes' control of Mr. Kasperzyk's employment as well as the Letterman-Shelter and SEIU contract provisions, the Court finds it plausible that Lucasfilm and Letterman acted as joint employers with Shetler. Lucasfilm and Letterman had "the right to control and direct the activities" of Mr. Kasperzyk as well as control over "the manner and method in which the work is performed." *Wal–Mart,* 572 F.3d at 682 (9th Cir.2009). Accordingly, both Defendants were legally capable of committing the underlying tort of wrongful termination.

The Court finds cases cited by Defendants distinguishable. In *Weinbaum*, Plaintiffs were audit managers alleging wrongful termination by their employer, Goldfarb, Whitman & Cohen, because they objected to preparing false financial and accounting reports for corporate clients. *See Weinbaum*, 46 Cal.App.4th at 1313-14. There, Plaintiffs asserted a civil conspiracy claim for their wrongful discharge against two banks that worked with their employer to provide loans to allegedly insolvent corporate clients. *Id.* The court rejected the civil conspiracy claim against the two banks because the banks were not Plaintiffs' employer and could not commit the underlying tort of wrongful discharge. *Id.* at 1317. Similarly, in *Khajavi v. Feather River Anesthesia Med. Grp*.,

Plaintiff, an anesthesiologist, was terminated by the Medical Center where he was employed after an altercation with a surgeon. *See* 84 Cal. App. 4th 32 (2000). The California Court of Appeals rejected the civil conspiracy claim against the surgeon given he was "legally incapable" of terminating Plaintiff's employment because he was not an employer. *Id.* at 55.

Here, in contrast to *Weinbaum* and *Khajavi*, Mr. Kasperzyk alleges sufficient facts to state a plausible civil conspiracy claim against both Defendant Lucasfilm and Defendant Letterman. The Court DENIES both Lucasfilm's and Letterman's motions to dismiss claim twelve.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Lucasfilm's and Letterman's motions to dismiss as to claim eleven for negligence in hiring, supervision, or retention without leave to amend and **DENIES** the motions as to claim twelve for civil conspiracy.

This order disposes of Docket Nos. 54 and 55.

IT IS SO ORDERED.

Dated: May 2, 2014

EDWARD M. CHEN
United States District Judge