**United States District Court**
For the Northern District of California

1
2
3
4
5                           UNITED STATES DISTRICT COURT
6                          NORTHERN DISTRICT OF CALIFORNIA
7
8   JORDAN KASPERZYK,                              No. C-13-3358 EMC/TEH
9            Plaintiff,                            No. C-13-3383 EMC/TEH
10       v.
11  SHETLER SECURITY SERVICES,                     **CONSOLIDATED CASES**
    INC., *et al.*,
12                                                 **ORDER GRANTING IN PART AND**
            Defendants.                            **DENYING IN PART DEFENDANTS'**
13  _____/              **MOTIONS FOR SUMMARY JUDGMENT**
14                                                 **(Docket Nos. 92, 98)**
15
16
17        Plaintiff Jordan Kasperzyk filed suit against Defendants Shetler Security Services, Inc. and

18  Michael Shetler (collectively, SSS), along with Lucasfilm Ltd.; Letterman Digital Arts Ltd.; and

19  Skywalker Properties (collectively, Lucasfilm).  The bulk of Plaintiff's claims are against SSS.  All

20  of his claims stem from his termination from work as a security guard at Lucasfilm's Letterman

21  Digital Arts Center compound in San Francisco's Presidio – a termination that he believes was

22  motivated by animus against him because he was disabled.

23        Currently pending before the Court are summary judgment motions filed by both SSS,

24  Docket No. 98, and Lucasfilm.  Docket No. 92.  For the reasons explained below, SSS's summary

25  judgment motion is granted in part and denied in part.  Lucasfilm's summary judgment motion is

26  denied.

27
28

**United States District Court**
For the Northern District of California

# I.   BACKGROUND

A.   Factual Background

Mr. Kasperzyk is a licensed security guard.  *See* Docket No. 88-1 (Fourth Amended Complaint) (FAC) ¶ 39.[1]  In 2008, he was hired by Advanced-Tech, which at that time provided security at the Letterman Digital Arts Center.  *See* FAC ¶ 39.  As a new hire with Advanced-Tech, Mr. Kasperzyk was required to join a local union.  *See* FAC ¶ 42.

In January 2010, while working for Advanced-Tech, Mr. Kasperzyk hurt his back "when a motorist whose car he had ticketed for over parking [at the Center] struck him with his car."  FAC ¶ 51; *see also* Docket No. 94 (DeFilippo Decl.) at ¶13 .  He was able to return to work, but "on a limited basis, with medically prescribed work restrictions.  These work restrictions prohibited him from any heavy lifting, and required a post that would permit him to vary his position by alternately sitting or standing occasionally for several minutes at a time to relieve the stress on his back."  FAC ¶ 53; *see also* DeFilippo Decl. ¶ 14.

In or about May 2010, Advanced-Tech lost its contract to provide security for Lucasfilm, and the contract was awarded to SSS.  *See* FAC ¶¶ 54-55; Docket No. 100 (Livingston Decl.), Ex. D. Lucasfilm's contract with SSS provides that SSS "shall not take any action contrary to any applicable law, rule, regulation or order prohibiting discrimination against employees . . . on the basis of . . . disability . . . or contrary to any other provision of laws of this Agreement.'"  Livingston Decl., Ex. D. at 13.  The contract also provides that Lucasfilm "reserves the right to request that [SSS] remove and replace any of [SSS's] personnel assigned to perform [security services for Lucasfilm].  In such event, [SSS] shall review the circumstances behind the Company's request and determine whether to replace such personnel with properly qualified personnel as soon as it is reasonably practical or to offer [Lucasfilm] alternative actions."  *Id.* at 4; *see also* Docket No. 95-1 (Noyes Depo. Tr.) at 73:12-18 (testimony from Lucasfilm's Director of Security that he had the authority to require SSS to remove security personnel at his direction).

---

[1] Where the facts are undisputed or otherwise not material to the determination of Defendants' summary judgment motions, the Court will draw them from Kasperzyk's operative complaint.

When SSS took over security for Lucasfilm, it also signed a collective bargaining agreement (CBA) with Mr. Kasperzyk's local union.  The CBA includes a provision (Article 3) that states:

> The Union and [SSS] agree that they shall not discriminate in violation of federal and state law against any . . . employee in hiring, promotions, assignments, suspensions, discharge, terms and conditions of employment, wages, training, recall or lay-off status . . . [or] against a qualified individual with a disability (defined by the Americans with Disabilities Act).

FAC ¶ 88.  The CBA also includes a provision (Article 27.2) that states:

> If a customer demands that the Company remove an employee from further employment at a location, the Company shall have the right to comply with such demand.  However, unless the Company has cause to discharge the employee, the company will use its best efforts to place him/her in another job in the same County not to exceed ten (10) miles from the job site from which he or she was removed, and schedule said employee with no loss of wages, seniority or benefits and with the same shift.

FAC ¶ 89.  Finally, the CBA contains a four step grievance procedure for employees to follow in the event of any work-related dispute.  Livingston Decl., Ex. C at Art. 25.  Steps one and two require informal adjudication of grievances first with representatives of the Union, and then with Management.  *Id.*  Steps three and four permit a grievance to be submitted to binding arbitration only "[i]f the grievance has not been settled under" the provisions in steps one and two.  *Id.*

After SSS took over security at the Presidio from Advanced-Tech, Advanced-Tech's employees were told that "anyone who wished to remain at the [Letterman Digital Arts] Center and work for [SSS] could do so by simply signing up."  FAC ¶ 29.  Plaintiff exercised this option, and thus remained a security guard for Lucasfilm at its Presidio location.  FAC ¶ 60.  Kasperzyk did not sign an employment contract with SSS.  *See* Docket No. 98 at 18 (admitting that "[t]here is no employment contract").  SSS maintains, however, that it issued Plaintiff an employee handbook.  Livingston Decl., Ex. E. (Handbook Excerpts).  The front page of the handbook contains a self-styled "At Will Statement" that reads in relevant part:

> All employment with [SSS] is strictly "at will."  This means that each employee may terminate his or her employment with the Company at anytime with or without notice. [SSS] can also terminate any employee's employment with [SSS] at any time with or without notice and with or without cause.

United States District Court
For the Northern District of California

*Id.* SSS provided no evidence that Plaintiff received or reviewed the handbook, nor did SSS provide any evidence that Plaintiff assented to the terms contained therein, including the "At Will Statement."

Plaintiff manned a post in the visitor's parking lot of the Lucasfilm facility until October 2010.  Docket No. 110 (Kasperzyk Decl.) ¶ 5.  At that time, Kasperzyk claims he was reassigned to a post at the child care facility.[2]  *Id.*  According to Plaintiff's former supervisor, Michael DeFilippo, the "daycare post, in particular, [was] a great fit for Mr. Kasperzyk, as it gave him freedom to stand up and stretch, and did not require heavy lifting."  DeFilippo Decl. ¶ 16.

In November 2010, SSS claims that Mr. Kasperzyk informed his supervisors that he was "unable to stand or sit for an extended period of time" and that "he could only occupy a desk position."  Livingston Decl. ¶ 3-4.  According to SSS, Plaintiff expressed a preference for a "posting at the front desk of the property."  Livingston Decl. ¶ 3.  SSS avers, however, that there "were no positions available at the front desk," nor were there any "available positions at the Presidio worksite" that could accommodate Plaintiff's work restrictions.  Livingston Decl. ¶ 3-4.

On November 4, 2010, Kasperzyk received a letter from Mark Livingston, SSS's general counsel, informing him that "the Company will not be able to continue your employment."  Kasperzyk Decl., Ex. A. (Termination Letter).  The letter began by noting that Plaintiff's "current posting was being eliminated at the behest of the client."  *Id.*  Mr. Livingston then noted that SSS had received a doctor's note from Plaintiff "that contained significant restrictions[,] namely that you could only perform a posting where you could sit continually for 8 hours per day."[3]  *Id.*  "There is no time limitation for these restrictions, which appear to be permanent."  *Id.*  Mr. Livingston then noted that we "met with you to discuss possible postings for which you might be qualified and if there was an accommodation that would allow you to perform the essential job functions.  You and we were

---

[2] Plaintiff claims he was transferred from his post at the visitor's parking lot to the post at the child care center because the visitor's parking lot post was "eliminated" by Lucasfilm.  *Id.*  SSS admits that the parking lot post was terminated by Lucasfilm.  Livingston Decl. ¶ 4.

[3] Kasperzyk submitted evidence that characterizes his limitations differently.  *See* DeFilippo Decl. ¶ 14 (supervisor testified that in his recollection, Kasperzyk's work restrictions "were minimal, only requiring that he be placed at a post that would allow him to alternatively sit and stand whenever needed, and now [sic] lift anything over . . . 25 pounds").

**United States District Court**

For the Northern District of California

1   unable to identify a posting where you could perform the essential job functions with or without

2   reasonable accommodation."  *Id.*  Mr. Kasperzyk stated in a declaration that "[n]either Mr.

3   Livingston nor any other manager at Shetler ever discussed other possible postings with me, or any

4   ways that my medical limitations could be accommodated.  No one offered me any alternative

5   positions, or asked me if there were any positions where I was medically fit to work."[4]  Kasperzyk

6   Decl. ¶ 3.  Kasperzyk further states that at the time of his termination, he was trained and medically

7   able to work at various positions at the Letterman Digital Arts Center, including "lobby positions at

8   Buildings A, B, C, and D, as well as the daycare position."  *Id.* at ¶ 4.

9        Mr. Kasperzyk subsequently contacted his union to challenge the termination.  In April 2011,

10  a mediation[5] was conducted at the union's offices in Oakland.  Docket No. 99-2 (Kasperzyk Depo.

11  Tr.) at 19:21-22.  Mike Shetler, Mark Livingston, Tom Dinnauer (SSS's site supervisor at the

12  Letterman Digital Arts Center) and Greg Morales (a SEIU union representative) attended the

13  mediation, along with Plaintiff.  *Id.* at 60:13-17.  It is undisputed that during the proceeding, Mr.

14  Shetler orally promised to reinstate Plaintiff to a job at the Letterman Digital Arts Center.  *Id.* at

15  61:4-15; *see also* Livingston Decl. ¶ 6 (confirming that "Mr. Kasperzyk was extended a job offer to

16  resume his work as a security officer on the Presidio").  SSS contends, however, that its job offer

17  was "specifically conditioned upon the approval from the client [Lucasfilm]."  Livingston Decl. ¶ 6.

18  Plaintiff disputes that SSS conditioned the job offer on Lucasfilm's approval, and avers that Mr.

19  Morales "recalls the same thing, that the offer to give me my job back was unconditional."[6]

---

21       [4] FEHA requires an employer to engage in an interactive process with an employee "to
22  attempt to identify a reasonable accommodation that will enable the employee to perform the job
     effectively."  *Scotch v. Art Institute of California-Organ Cnty., Inc.*, 173 Cal. App. 4th 986, 1013
23  (2009); *see also* Cal. Gov. Code § 12940(n) ("It is an unlawful employment practice . . . [f]or an
     employer . . . to fail to engage in a timely, good faith interactive process with the employee . . . .")
24  Because SSS did not move for summary judgment on this claim, Kasperzyk may try to prove at trial
     that SSS failed to engage in the interactive process.

25       [5] As described below, Plaintiff now contends that the proceeding was an arbitration, but
     provided no evidence to support that claim.  Such a contention appears to be inconsistent wit the
26  four step grievance process set forth in the CBA.  And as noted below, in deposition, Plaintiff
     conceded it was a mediation.  Consequently, the Court refers to the April 2011 adjudicative
27  proceeding as a mediation.

28       [6] Plaintiff did not provide any evidence to support his assertion regarding Mr. Morales'
     purported recollection of the promise(s) made during the mediation.

**United States District Court**
For the Northern District of California

1   Kasperzyk Decl. ¶ 6.  In reliance on SSS's promise of reinstatement, Plaintiff dismissed his union

2   grievance.  *Id.*

3        Immediately after the mediation, Mr. Livingston called Anders Noyes, the Head of Security

4   for Lucasfilm.  Livingston Decl. ¶ 7.  Mr. Livingston "left a message for Mr. Noyes informing him

5   about the mediation and [SSS's] intent to reinstate Mr. Kasperzyk."  *Id.*  Mr. Noyes, however,

6   refused to allow Plaintiff to return to his position at Lucasfilm, sending an email to Mr. Shetler that

7   indicated that "bringing Jordan back to my site . . . is not acceptable.  Jordan is not allowed to work

8   on any of the Lucas sites."  Docket No. 101-1.  When asked about his decision not to permit Mr.

9   Kasperzyk to return to work at Lucasfilm, Mr. Noyes testified as follows:

10       Q: And what was the reason that you asked Mr. Kasperzyk be
11       removed [from employment]:

         A: It was compound.  You know, there's two reasons for it.
12
         Essentially, when Mr. Kasperzyk was there, he worked under several
13       companies for the time that he was there.  He had developed a
         reputation, that had been told to me by various supervisors, of being
14       average.  And actually one, Tom Dinnauer, quoted to me that he was
         lazy, a lazy employee; and if I have an opportunity to have some – a
15       new employee who is above average, I would opt for that.

16       Secondly, at the time that Mr. Kasperzyk was – I asked for him to be
         removed from the campus, there was disagreement amongst the
17       Shetler management about bringing him back to my particular site to
         work.
18
         Mike Shetler and Mark Livingston wanted to bring him back to my
19       campus.  However, the local manager, Tom Dinnauer, had concerns
         about bringing him back.  *As he stated to me, he had never seen a*
20       *medical release and didn't understand what Jordan's restrictions were*
         *or were not returning to work.*
21
         So he is – his opinion was he should not be returned to my campus.
22       And I opted to follow Tom's recommendation as opposed to Mike['s]
         and Mark Livingston['s].
23
24   Noyes Depo Tr. 56:1-25. (emphasis added).

25       Mr. Noyes further testified that Mr. Dinnaeur had "concerns about bringing Jordan back

26   without a medical release," and that he "agreed" with Dinnauer that there "was a concern if there

27   was no medical release with restrictions or lack of restrictions."  *Id.* at 77:2-13.

28

1    The day after the mediation, Plaintiff reported to work at the Lucasfilm site, where he met

2    with Tom Dinnaeur.  Mr. Dinnaeur informed Plaintiff that "the client didn't want [him] back," and

3    thus he would not be reinstated.  Kasperzyk Depo. Tr. at 61:19-20.  Kasperzyk has not returned to

4    the Lucasfilm site since.  Noyes Depo. Tr. at 102:4-13. Mr. Kasperzyk was not offered alternate

5    employment by SSS because it "maintained only one account in the San Francisco Bay Area . . .

6    [and] had no other location or site [at which] to place Mr. Kasperzyk."  Livingston Decl. ¶ 9; *see*

7    *also* DeFilippo Decl. ¶ 17 (stating that as of October 2010, SSS's only contract in California was

8    with Lucasfilm).

9    B.   Procedural Background[7]

10   Based on, *inter alia*, the above allegations, Mr. Kasperzyk asserts the following eleven

11   causes of action against SSS in his Fourth Amended Complaint:[8]

12   (1)  **Disability Discrimination (California Fair Employment and Housing Act ("FEHA"))**.

13        According to Mr. Kasperzyk, he was fired by SSS on account of his disability.  The adverse

14        employment actions taken by SSS were (a) terminating him in November 2010 and then (b)

15        terminating him a second time in April 2011.  *See* FAC ¶ 77. [Independent Claim]

16   (2)  **Breach of Contract (Disability Discrimination)**.  Plaintiff's first claim for breach of

17        contract is based on the contract between SSS and Lucasfilm.  Mr. Kasperzyk maintains that

18        he was a third-party beneficiary of the contract,[9] and that SSS breached the contract by

19        discriminating against him on the basis of disability.  *See* FAC ¶¶ 83-85. [Dependent on

20        Claim 1].

21

---

22   [7] This case has a complicated procedural history, which is described in significant detail in
23   this Court's previous opinions, familiarity with which is presumed.  *See* Docket Nos. 36, 48, 74.

24   [8] After each claim, the Court has included brackets that indicate whether the claim is an
     independent claim or, instead, whether its viability depends on the success of another of Plaintiff's
25   claims.

26   [9] This Court previously held that whether Plaintiff was a third-party beneficiary of the
     relevant contracts "is generally a factual question" that "turns on the intent of the contracting
27   parties."  Docket No. 48, reported at *Kasperzyk v. Shetler Sec. Servs., Inc.*, No. C-13-3383 EMC,
     2014 WL 31434, at *14 (N.D. Cal. Jan 3, 2014).  No party sought summary judgment on this ground
28   or presented relevant evidence to prove or disprove whether Kasperzyk is a third-party beneficiary
     of the relevant contracts.  Thus, this remains an open question to be proved at trial.

United States District Court
For the Northern District of California

**United States District Court**

For the Northern District of California

(3)     **Breach of Contract (Disability Discrimination)**.  Plaintiff's second claim for breach of contract is based on the contract between SSS and the Union.  Mr. Kasperzyk maintains that he was a third-party beneficiary of the contract, and that SSS breached the contract by (a) discriminating against him on the basis of disability and (b) failing to use its best efforts to place him in another job after terminating him in November 2010.  *See* FAC ¶¶ 90-91. [Dependent on Claim 1]

(4)     **Breach of Contract (Failure To Reinstate Employment)**.  Plaintiff's third claim for breach of contract is based on the oral agreement made during the April 2011 mediation.  According to Mr. Kasperzyk, SSS made an offer to reinstate him in his position at Lucasfilm, which he accepted, but SSS subsequently breached that agreement by failing to re-employ him.  *See* FAC ¶¶ 95-96. [Independent Claim]

(5)     **Breach of the Implied Covenant of Good Faith and Fair Dealing**.  This claim is based on the employment agreement between SSS and Kasperzyk.  Kasperzyk asserts that SSS breached the implied covenant of good faith and fair dealing because each time SSS terminated Mr. Kasperzyk, it did not have good and sufficient cause to do so, which amounted to an unfair interference with the right of Mr. Kasperzyk to receive the benefit of the contract.  *See* FAC ¶ 104. [Independent Claim]

(6)     **Retaliation (Whistleblowing – FEHA)**.  According to Mr. Kasperzyk, after he testified on behalf of a former Advanced-Tech employee (Abbas Idris) who had apparently suffered harassment on the basis of his race and religion, Mr. Kasperzyk was terminated.  *See* FAC ¶¶ 108-111. [Independent Claim].

(7)     **Failure to Prevent Discrimination (Disability Discrimination – FEHA)**.  According to Mr. Kasperzyk, SSS "was on notice that it had an obligation to prevent its disabled employees from discrimination and harassment in its workplace," but, in spite of that notice, it "took no action to protect [him] once he disclosed his protected status as a disabled person."  FAC ¶ 115.  Rather, SSS terminated him on two different occasions – first in November 2010 and then in April 2011.  *See* FAC ¶ 116. [Dependent on Claim 1].

United States District Court

For the Northern District of California

(8)  **Wrongful Termination in Violation of Public Policy (Disability Discrimination)**.  Mr. Kasperzyk asserts that even though his job performance was satisfactory and he was capable of performing his duties with or without reasonable accommodation, SSS terminated him on the basis of his disability, in violation of public policy.  *See* FAC ¶¶ 121-24. [Dependent on Claim 1].

(9)  **Common Law Fraud (Failure to Reinstate Employment)**.  Mr. Kasperzyk alleges that, when SSS promised to reinstate him at the mediation in April 2011, it knew the promise was false.  *See* FAC ¶¶ 97-98.  According to Mr. Kasperzyk, he relied on the promise by dismissing his union grievance in exchange for getting his job back.  *See* FAC ¶¶ 128-130. [Dependent on Claim 4].

(10)  **Intentional Infliction of Emotional Distress**.  Mr. Kasperzyk alleges that all of SSS's above-charged conduct "constitutes outrageous conduct" that exhibited willful or reckless disregard for Plaintiff's rights and caused him to suffer "shock and serious mental and emotional distress."  FAC ¶¶ 135-136. [Dependent on Claims 1-9].

(11)  **Civil Conspiracy**.  Kasperzyk's final cause of action alleges that SSS conspired with Lucasfilm to "deprive Plaintiff of employment in violation of FEHA and of Plaintiff's contractual rights."  FAC ¶¶ 139-140. [Dependent on Claims 1-10].

As noted above, Kasperzyk's operative complaint only pleads one cause of action against Lucasfilm; claim eleven for civil conspiracy.  FAC ¶¶ 138-142.

Lucasfilm filed its currently pending motion for summary judgment on December 29, 2014.  Docket No. 92.  SSS filed its own motion for summary judgment on January 13, 2015.  Docket No. 98.  This Court held a hearing on the motions on February 26, 2015.  Docket No. 113.  While Defendants' motions were under submission, this case was reassigned to the Honorable Thelton E. Henderson for all further proceedings, including trial.  Docket No. 114.  So as to allow Judge Henderson and the parties to effectively prepare for trial, this Court issued a short order without analysis containing its summary judgment rulings.  Docket No. 115.  The Court now explains the basis for its summary judgment rulings in this Order.

United States District Court

For the Northern District of California

## II. <u>DISCUSSION</u>

A.   <u>Legal Standards</u>

    1.   <u>Summary Judgment Standard</u>

The court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The court must view the evidence, and all reasonable inferences therefrom, "in the light most favorable to the nonmoving party." *Cameron v. Craig*, 713 F.3d 1012, 1018 (9th Cir. 2013). An issue of fact is material if it has the potential to "affect the outcome of the case." *Orgill/Singer & Associates, Inc. v. Federal Ins. Co.*, 943 F. Supp. 2d 1141, 1142 (D. Nev. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the party opposing summary judgment must "come forward with specific facts showing that there is a *genuine issue for trial* . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* at 587 (internal quotation marks and citations omitted) (emphasis in original).

    2.   <u>Burden Shifting Under *McDonnell Douglas*</u>

The California Supreme Court has held that the federal *McDonnell Douglas*[10] test applies to state discrimination claims brought under FEHA, and that California courts "look to pertinent federal precedent when applying our own statutes." *Guz v. Bechtel Nat. Inc.*, 8 P. 3d 1089, 1113 (Cal. 2000). The *McDonnell Douglas* test "reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially. Thus, by successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained." *Id.*

---

[10] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

**United States District Court**
For the Northern District of California

Under *McDonnell Douglas*, the plaintiff has the initial burden to establish a prima facie case of discrimination.  Generally, the plaintiff must provide evidence that: (1) he was a member of a protected class, (2) he was performing according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) other employees with qualifications similar to his own were treated more favorably, or some other circumstance suggests discriminatory motive.  *See id.*; *see also Goodwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998).  "The requisite degree of proof necessary to establish a prima facie case . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Goodwin*, 150 F.3d at 1220 (citation omitted); *see also Guz*, 8 P. 3d at 1113 ("While the plaintiff's prima facie burden is not onerous, he must at least show actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a prohibited discriminatory criterion.") (internal quotation marks and modifications omitted) (citations omitted).

If the plaintiff makes out a prima facie case of discrimination, the burden of production shifts to the employer to provide "evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142 (2000) (citation omitted).  If the employer can articulate a facially nondiscriminatory reason(s) for the allegedly discriminatory conduct, the burden shifts back "to the plaintiff to show that the employer's reason was a pretext for discrimination." *Goodwin*, 150 F.3d at 1220.  "That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence." *Reeves*, 530 U.S. at 143 (internal quotation marks and citation omitted).

"[A] plaintiff at the pretext stage must produce evidence in addition to that which was sufficient for the prima facie case in order to rebut the defendant's showing." *Goodwin*, 150 F.3d at 1220 (citation omitted).  "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to actual motivation of the employer is created even if the evidence is not substantial." *Id.* at 1221.  "Direct evidence is evidence, which, if believed, proves the fact of discriminatory animus without inference or presumption." *Id.* (internal modification and citation

**United States District Court**
For the Northern District of California

omitted).  Where direct evidence of discrimination is unavailable, "the plaintiff may come forward with circumstantial evidence that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable.  Such evidence of pretense must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate." *Id.* at 1222 (quoting *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996)).  A plaintiff alleging disability discrimination facing summary judgment may only proceed to trial "if, based on the evidence in the record, a reasonable jury could conclude by a preponderance of the evidence that the defendant undertook the challenged employment action because of the plaintiff's [disability]." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).

B.      Disability Discrimination Under FEHA (Claims 1, 2, 3, 7, and 8)

        The majority of Plaintiff's claims depend on him proving that he suffered adverse employment consequences as a result of his disability.  Before analyzing the evidence in the record, it is important to keep in mind that there are two relevant adverse employment actions at issue here, one which took place in November 2010, when Kasperzyk was originally fired from his employment, and the second which took place in April 2011, when Kasperzyk was not reinstated to his position.

        1.      The November 2010 Termination

        Kasperzyk claims he was initially terminated from his employment at SSS because he was disabled.  Plaintiff satisfied his burden to prove a prima facie case with respect to his termination.  SSS does not dispute that Kasperzyk was disabled, and thus was a member of a protected class.  Docket No. 98 at 11 n. 3.  Nor does SSS seriously contend that it originally fired Kasperzyk because he was not performing up to SSS's legitimate expectations, or that he did not suffer an adverse employment action. *Id.* at 11.  And SSS cannot reasonably dispute that the context of Plaintiff's firing at least minimally "suggests discriminatory motive." *Guz*, 8 P. 3d at 1113.  SSS's letter to Plaintiff informing him of his termination explicitly states that he is being terminated solely because SSS allegedly could not accommodate Kasperzyk's disability. *See* Termination Letter (stating that the company "will not be able to continue your employment" because "we were unable to identify a

United States District Court

For the Northern District of California

1  posting where you could perform the essential job functions"). Thus, the burden shifted to SSS to

2  rebut the presumption of discrimination by providing sufficient evidence that "its action was taken

3  for a legitimate, nondiscriminatory reason." *Guz*, 8 P.3d at 1114.

4         Here, SSS has provided such evidence. For instance, the Termination Letter itself states that

5  Plaintiff was not being fired *because* of his disability, but rather because the client (Lucasfilm) had

6  "eliminated" Plaintiff's current position. Termination Letter. Moreover, the letter explains that

7  there were no other available positions at the Lucasfilm site "for which [Kasperzyk] is qualified and

8  can perform the essential job functions." *Id.* Indeed, SSS provided additional evidence to this

9  effect. SSS's general counsel, Mark Livingston, testified in a declaration that there were "no

10 positions available at the front desk," as Plaintiff had apparently requested, nor could Kasperzyk's

11 disability be "accommodated at any of the available positions at the Presidio worksite." Livingston

12 Decl. ¶¶ 3-4. Moreover, Livingston explained that at the time of Kasperzyk's termination, SSS "had

13 no other location or site to place Mr. Kasperzyk [at]" because SSS "maintained only one account in

14 the San Francisco Bay Area." Livingston Decl. ¶ 9. Thus, the burden shifted back to Kasperzyk to

15 show that SSS's proffered explanation for his termination in November 2010 (*i.e.*, that there were no

16 available positions for him) is "unworthy of credence." *Reeves*, 530 U.S. at 143.

17        There is sufficient evidence in the record to indicate that SSS's explanation for Plaintiff's

18 November 2010 termination is pretextual. Plaintiff claimed in his declaration that he had been

19 working at a post at the Lucasfilm day care center for nearly a month before his employment was

20 terminated in November 2010, and that he was capable of performing the necessary tasks required of

21 the position despite his disability. Kasperzyk Decl. ¶¶ 5-6. Kasperzyk's former supervisor

22 confirmed that the post at the day care center was "a great fit for Mr. Kasperzyk, as it gave him

23 freedom to stand up and stretch, and did not require heavy lifting." DeFilippo Decl. ¶ 16. Put

24 simply, there is evidence in the record (viewed in the light most favorable to the non-moving party)

25 that Kasperzyk was capable of performing the essential tasks required at the day care center.

26        As noted above, SSS's letter terminating Plaintiff's employment indicates that Kasperzyk

27 was being fired because his position "was being eliminated at the behest of the client." Termination

28 Letter. But as far as the evidence reveals, the specific position that was eliminated by Lucasfilm was

United States District Court

For the Northern District of California

Kasperzyk's *former* position at the visitor's parking lot.  *See* Livingston Decl.¶ 4 ("Mr. Kasperzyk's position at the visitor parking lot was terminated by Letterman Digital Arts."); DeFillipo Decl. ¶ 16 (stating that he was informed by SSS that the visitor parking lot position was being eliminated); Noyes Depo Tr. at 156:25-157:12 (testifying the Kasperzyk worked at the visitor parking area or at the top of the ramp leading to the parking garage).  There is no evidence in the record that the position at the day care center was also eliminated, or that it was somehow "unavailable" to Kasperzyk in November 2010.  Indeed, viewing the evidence in the light most favorable to Kasperzyk, the day care center position most certainly *was* available to Kasperzyk at the time he was fired, because Kasperzyk was presently occupying that post.[11]  Consequently, the Court finds that a reasonable jury on the current record could conclude that SSS's stated reason for terminating Plaintiff is "unworthy of credence," and could therefore find that Plaintiff was unlawfully discriminated against on the basis of his disability.  *See Reeves*, 530 U.S. at 147 (explaining that a jury is permitted to "infer the ultimate fact of intentional discrimination" if it concludes that the defendant's proffered reason(s) for a termination are false).

    2.    <u>Failure to Re-Hire in April 2011</u>

Plaintiff alleges he suffered an additional adverse employment event on account of his disability when SSS failed to reinstate him to his position with Lucasfilm after the April 2011 mediation.  The Court concludes (for largely the same reasons discussed above) that Plaintiff has made out a prima facie case of disability discrimination, shifting the burden to SSS to present a nondiscriminatory reason why Kasperzyk was not rehired.

SSS claims that it did not rehire Kasperzyk because the client, Lucasfilm, did not want him to return to its campus.  This fact is undisputed.  *See* Kasperzyk Depo. Tr. at 61:18-62:9.  SSS further claims that it could not rehire Kasperzyk over Lucasfilm's objection, because Lucasfilm had a contractual right to reject any potential contractors SSS might employ at Lucasfilm's sites.  This fact is similarly undisputed.  *See* Docket No. 93 at 10-11 (describing Lucasfilm's "veto power" over Plaintiff's employment in Presidio).  Finally, Lucasfilm's Head of Security testified that he

---

[11] Although at the hearing SSS's attorney asserted that the day care position was only a temporary fill-in for another permanent employee, SSS introduced no evidence of this.

United States District Court

For the Northern District of California

1    exercised his right to veto Kasperzyk's reinstatement because he had been informed by "various

2    supervisors," including Kasperzyk's supervisor from SSS, that Plaintiff was an "average" employee

3    and that he was "lazy." Noyes Depo. Tr. at 56:3-12. This evidence is sufficient to shift the burden

4    back to Kasperzyk to demonstrate that SSS's stated reasons for not re-hiring him are pretextual.

5        Once again, Plaintiff has presented sufficient evidence to cast SSS's stated reasons for his

6    termination into doubt. Specifically, Plaintiff points to deposition testimony from Ander Noyes, the

7    Head of Security for Lucasfilm. According to Noyes, despite the fact that Messrs. Shetler and

8    Livingston (the owner and general counsel of SSS, respectively) allegedly asked Noyes to reinstate

9    Plaintiff, Noyes chose to take the advice of SSS's local site manager, Tom Dinnauer, who, as Mr.

10    Noyes testified, "had concerns about bringing [Plaintiff] back." Noyes Depo. Tr. at 56:19-20.

11    Although one of these concerns was that Plaintiff was allegedly a "lazy employee," *id.* at 56:9-10,

12    Noyes also testified that Dinnauer "stated to me, he had never seen a medical release and didn't

13    understand what Jordan's restrictions were or were not returning to work." *Id.* at 56:20-22. Noyes

14    further testified that Mr. Dinnauer had "concerns about bringing Jordan back without a medical

15    release," and that he "agreed" with Mr. Dinnauer that there "was a concern if there was no medical

16    release with restrictions or lack of restrictions." *Id.* at 77:2-13.

17        It appears neither Lucasfilm's Noyes nor SSS's Dinnaeur made any attempt to determine

18    whether Kasperzyk had a medical release, or made any effort to ascertain any job restrictions he

19    might have had on account of his disability. Rather, Noyes called Mr. Livingston the very same

20    afternoon he spoke with Mr. Dinnaeur to inform SSS that he "did not want Mr. Kasperzyk back on

21    the Presidio." Livingston Decl.¶ 8. Not long after, Noyes emailed Mr. Shetler regarding Plaintiff,

22    writing that "[i]t is my understanding that there was some thought about bringing Jordan back to my

23    site . . . or another Lucas facility. This is not acceptable. Jordan is not allowed to work on any of

24    the Lucas sites . . . ." Docket No. 101-1. A jury could infer SSS's discriminatory motive from the

25    above-described chain of events. *See Reno v. Baird*, 957 P. 2d 1333, 1342 (Cal. 1998) (noting that

26    an employer may be held liable for discrimination committed by the employer's agent via the

27    doctrine of respondeat superior). At the instance of SSS's supervisor, Mr. Dinnauer, Mr. Noyes

28    exercised his "veto" over Kasperzyk because Dinnaeur was uncertain about the terms of Plaintiff's

United States District Court

For the Northern District of California

medical release; yet neither Noyes nor Dinnaeur evidently made any effort to obtain the records and information about the release, even though there was such a record.  *See* DeFilippo Decl. ¶ 14 (stating that Dinnaeur received doctor's notes describing Plaintiff's work restrictions every few weeks beginning after Kasperzyk was disabled).  Moreover, even though Livingston purportedly left a message with Noyes stating SSS intended to reinstate Kasperzyk, there is no evidence that Livingston objected to or communicated further with Noyes after Noyes decided to exercise his veto power contrary to Livingston's directive.  These facts, along with the timing and sequence of events – wherein Plaintiff was terminated just one day after Mr. Livingston sought to reinstate him and Plaintiff dismissed his union grievance – could reasonably raise the jury's suspicion that Noyes's veto power under the SSS contract was used at SSS's instance to obtain indirectly what SSS could not do directly:  remove Plaintiff from the Letterman Digital Arts Center.

Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could infer that Messrs. Noyes and Dinnaeur arranged to prevent Kasperzyk from returning to work, and did so on the basis of his disability.

C.    Breach of Oral Contract and Fraud (Claims 4 and 9)

Plaintiff's fourth claim alleges that SSS breached an oral promise to reinstate him at his job in the Presidio in exchange for him agreeing to dismiss his union grievance.  The alleged oral contract was made during the April 2011 adjudicative proceeding, and Kasperzyk's ninth claim is for common law fraud arising out of the same occurrence.[12]

SSS argues that mediation confidentiality prevents Plaintiff from introducing any evidence about an alleged oral agreement reached between the parties, and thus no action for breach of contract or fraud can lie based on any conduct that occurred at the mediation.  As this Court

---

[12] SSS notes that Plaintiff did not separately oppose its summary judgment motion with respect to the fraud claim, and thus argues Claim 9 has been abandoned as a matter of law.  *See Newton v. American Debt Services, Inc.*, -- F. Supp. 3d --, No. C-11-3228 EMC, 2014 WL 7183930, at *11 (N.D. Cal. Dec. 16, 2014) (holding that where a party does not "provide any evidence that would be relevant to defeat summary judgment," that party has "conceded [the claim] as a matter of law") (citations omitted). While a party may abandon a claim by failing to respond to a summary judgment motion on that claim, *see id.*, the Court will not find abandonment here.  Instead, the Court grants summary judgment against Plaintiff on his fraud claim on the merits.

United States District Court
For the Northern District of California

1    recognized in an earlier order,[13] California law "sets forth an extensive statutory scheme protecting

2    the confidentiality of mediation proceedings." *Simmons v. Ghaderi*, 187 P. 3d 934, 936 (Cal. 2000).

3    Except in very narrow circumstances (which are not applicable here), a party to a mediation held in

4    California may not admit evidence or otherwise attempt to prove the contents of an oral settlement

5    agreement.[14]  *See id.* at 943 (describing mediation confidentiality statutes as an "unqualified[] bar" to

6    disclosure of communications produced in mediation "absent an express statutory exception").

7    Hence in *Simmons*, the California Supreme Court held that "the mediation confidentiality statutes

8    made inadmissible all evidence of an oral contract between plaintiffs and defendant during

9    mediation.  Thus, there was no evidence to prove plaintiff's breach of contract claim, and defendant

10   was entitled to judgment as a matter of law." *Id.* at 946.

11       Given the clear rule of *Simmons* that oral agreements reached at mediation may not be

12   proved absent certain (non-applicable) exceptions, SSS is entitled to summary judgment on

13   Plaintiff's breach of contract and fraud claims if the proceeding at which the oral promise was made

14   took the form of a mediation as opposed to an arbitration.  As expected, SSS contends the

15   proceeding was a mediation.  Plaintiff's first two complaints similarly referred to the proceeding as a

16   mediation.  *See, e.g.*, Docket No. 46 (Second Amended Complaint) (SAC) at ¶¶ 63, 90, 124.

17   Moreover, Plaintiff testified at his deposition that he understood the proceeding to be a mediation –

18   at least until his attorney coached him to respond that he did not know one way or the other whether

19   the proceedings were an arbitration or mediation.  *Compare* Kasperzyk Depo Tr. at 19:21-25 ("Q:

20   Where did that mediation take place? A: In the Oakland SEIU union office.  Q: And your

21   understanding of the proceeding, that it was a mediation?  A: Correct") *and* Kasperzyk Depo. Tr. at

22   20:2-6 ("[Kasperzyk's lawyer]: I'm going to object as, are you asking – are you sure it was a

23   mediation or an arbitration?  Or you don't know?  A: I wasn't too sure.  I was told it was a

---

[13] *See Kasperzyk*, 2014 WL 31434, at *18.

[14] The exceptions to the rule against proving an oral settlement reached at mediation include when the "oral agreement is recorded by a court reporter or reliable means of audio record," the "terms of the oral agreement are recited on the record in the presence of the parties and the mediator, and the parties express on the record that they agree to the terms recited," and "the recording is reduced to writing and the writing is signed by the parties within 72 hours after it is recorded."  Cal. Evid. Code § 1118; *see also Simmons*, 187 P. 3d at 939-941.

United States District Court

For the Northern District of California

1   mediation.") *with* Kasperzyk Depo. Tr. at 20:20-23 ("[Kasperzyk's lawyer]: So, again, was it a

2   mediation or an arbitration, or you don't know? A: I don't know. [Kasperzyk's lawyer]: Okay").

3   And SSS further provided excerpts of the relevant CBA between SSS and the Union, which provides

4   that a covered employee may only submit a grievance to arbitration after the employee has

5   exhausted more informal methods of resolution, including mediation with a Union representative.

6   Livingston Decl., Ex. C at Art. 25.  Plaintiff presented no evidence that he exhausted the more

7   informal steps (steps 1 and 2) of the grievance procedure described in the CBA, thereby allowing

8   him to submit his dispute to arbitration under steps 3 and 4 of the contract.

9          Indeed, Plaintiff provided absolutely no evidence that would support his position that the

10  union proceeding was an arbitration as opposed to a mediation.[15]  Rather, he asserts that SSS does

11  not have evidentiary support for *its* position that the proceeding was a mediation.  Docket No. 106 at

12  5.  Plaintiff's response, however, ignores the evidence that SSS has presented – including Plaintiff's

13  own admissions at his deposition – that the proceeding was a mediation.  *See Matsushita Elec.*

14  *Indus. Co., Ltd.*, 475 U.S. at 586-87 (a party opposing summary judgment "must do more than

15  simply show that there is some metaphysical doubt as to the material facts," by coming "forward

16  with specific facts showing that there is a genuine issue for trial").  Thus, SSS is entitled to summary

17  judgment because mediation confidentiality defeats Claims 4 and 9.  *See Simmons*, 187 P. 3d at 946.

18  D.     Breach of Implied Covenant of Good Faith and Fair Dealing (Claim 5)

19         Plaintiff argues that SSS violated the covenant of good faith and fair dealing implied in his

20  oral employment contract with the company where he was fired without sufficient cause.  *See*

21  *generally Foley v. Interactive Data Corp.*, 765 P. 2d 373, 400 n. 39 (Cal. 1988) (employment

22  contracts necessarily include implied covenant of good faith and fair dealing, which generally

23  requires an employer to have "good cause" for termination).  SSS argues this claim must fail because

24  Plaintiff was an "at-will" employee, and thus he could be fired without cause at any time.  *See id.*

25  (explaining that "with regard to an at-will employment relationship, breach of the implied covenant

26

27  ──────────────

28         [15] Most notably, Plaintiff does not provide any evidence from the Union representative who
    attended the adjudicative proceeding.  *See* Kasperzyk Decl. ¶ 6.

18

United States District Court

For the Northern District of California

1   [of good faith and fair dealing] cannot logically be based on a claim that a discharge was made

2   without good cause"). SSS's argument cannot be credited at this juncture.

3        At the same time SSS recognizes that Plaintiff and SSS never actually signed an employment

4   contract, SSS tries to argue that the parties had an express agreement that Plaintiff's employment

5   was at-will based on the "At Will Statement" contained on the cover of SSS's employee handbook.

6   Docket No. 98 at 18-19. But SSS has provided no evidence that Kasperzyk ever assented to be

7   bound by the terms of the handbook, let alone proved that he ever even saw it. Thus, this Court

8   cannot grant summary judgment that there was an express agreement between the parties that

9   Kasperzyk's employment was "at will."

10       Nor can the Court grant summary judgment on the basis of SSS's alternative argument – that

11  even if it was contractually obligated to only terminate Plaintiff for good cause, it had good cause to

12  terminate Plaintiff because his position at Lucasfilm had been "eliminated" and there were not

13  alternative postings to which he could be reassigned that would reasonably accommodate his

14  disability. The merits of this argument track those rejected above as to Kasperzyk's disability

15  claims. Because disputed issues of material fact preclude summary judgment in favor of SSS

16  regarding the circumstances surrounding Kasperzyk's termination, summary judgment on his

17  implied covenant claim is similarly inappropriate.

18  E.   Retaliation/Whistleblowing (Claim 6)

19       Plaintiff's sixth claim against SSS is for unlawful termination in retaliation for testimony he

20  gave on behalf of a fellow security guard who was posted to the Letterman Digital Arts Center while

21  working for Plaintiff's previous employer, Advanced-Tech. That security guard, Abas Idris, sued

22  Advanced-Tech for harassment on account of his race and religion. *See Abas Idris v. Advanced-*

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

1   *Tech Sec. Servs.*, Case No. CGC-10-505056, Docket No. 1 (Cal. Super. Ct. 2010).[16]   Kasperzyk

2   apparently testified on Mr. Idris's behalf.

3          In order to prevail on his retaliation claim, Kasperzyk must show: (1) he was engaged in

4   protected activity, (2) an adverse employment action was thereafter taken against him, and (3) a

5   causal link exists between plaintiff's protected activity and defendant's adverse employment action.

6   *See Leland v. City and Cnty. of San Francisco*, 576 F. Supp. 2d 1079, 1094 (N.D. Cal. 2008).   The

7   Court assumes that the Plaintiff can satisfy the first two elements.   However, Plaintiff cannot satisfy

8   the third element – demonstration of a causal connection between the protected activity (*i.e.*,

9   testifying on behalf of Mr. Idris and against Advanced-Tech) and the adverse employment action

10   (*i.e.*, his termination from employment by SSS).

11          Plaintiff has presented no evidence that would support an inference that SSS, a completely

12   separate entity from Advanced-Tech, would terminate Plaintiff's employment in retaliation for

13   testimony given against Lucasfilm's previous security contractor.   Indeed, Plaintiff did not provide

14   any competent evidence that SSS even knew he had testified on Idris's behalf.   Kasperzyk's

15   opposition brief purports to quote from his deposition that "[t]he day before I was fired[] Mike or

16   Mr. Shetler or – and Dinnauer and Dague, they received a letter about me testifying in the Abbas

17   Idris case."   Docket No. 106 at 4.   But Kasperzyk did not put the relevant deposition excerpt into the

18   record, and therefore the Court cannot consider this testimony in ruling on summary judgment.   *See*

19   *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773-775 (9th Cir. 2002).   Moreover, even if the

20   Court credits Kasperzyk's unverified allegation that SSS somehow learned about his testimony in

21   the *Advanced-Tech* case, the fact remains that no reasonable jury could conclude from this fact alone

22   that SSS likely retaliated against Plaintiff for giving testimony purportedly unfavorable to an

23

24   _____

25          [16] The Court takes judicial notice of Mr. Idris's complaint in the *Advanced-Tech* case.  *See,*
26   *e.g.*, *Meredith v. Oregon*, 321 F.3d 807, 817 n. 10 (9th Cir. 2003) (finding state court filings the
       proper subject of judicial notice); *Grimes v. BAC Home Loans Servicing LP*, No. SACV 10-1320
27   DOC (MLGx), 2010 WL 4704321, at *1 n.1 (C.D. Cal. Nov. 10, 2010) (holding that judicial notice
       of a state court complaint is proper because it is a "'matter of public record'" whose "'accuracy
28   cannot reasonably be questioned'") (quoting Fed. R. Evid. 201).  Neither SSS nor the Lucasfilm
       entities were parties to the lawsuit.

United States District Court

For the Northern District of California

1    unrelated company; the *Idris* case was against Advance-Tech, not SSS.  Thus, the Court grants

2    summary judgment on Plaintiff's retaliation claim.[17]

3    F.    Intentional Infliction of Emotional Distress (Claim 10)

4          Plaintiff's final claim asserted solely against SSS is for intentional infliction of emotional

5    distress (IIED).  This claim is derivative to Plaintiff's first nine causes of action.  That is, the alleged

6    "extreme and outrageous" conduct at the heart of the IIED claim is the conduct described above

7    (*e.g.*, terminating Plaintiff on the account of his disability, breaching contractual agreements with

8    Plaintiff, etc).  *See Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80 (Cal. App. 1996)

9    ("An essential element of [a claim for intentional infliction of emotional distress] is a pleading of

10   outrageous conduct beyond the bounds of human decency.")

11         Plaintiff's IIED claim fails for multiple reasons.  Most obviously, Kasperzyk may not pursue

12   an IIED claim predicated on those of his claims which do not survive summary judgment, such as

13   his retaliation claim.  If SSS is entitled to summary judgment on the underlying causes of action on

14   which the IIED claim depends, then summary judgment is necessarily proper on the IIED claim.

15         More fundamentally, however, Plaintiff has not met his evidentiary burden to show IIED

16   even for those of his other claims which survive summary judgment.  The elements of an IIED claim

17   are: (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the

18   probability of causing emotional distress, (3) severe emotional suffering, and (4) actual and

19   proximate causation of the emotional distress.  *See Cole v. Fair Oaks Fire Protection Dist.*, 729 P.

20   2d 743, 746 n. 7 (Cal. 1987) (citing *Agarwal v. Johnson*, 603 P. 2d 58 (Cal. 1979)).  Here, Plaintiff

21   has made no evidentiary showing to support the third element (severe emotional suffering).  Nor, in

22   any likelihood, could Plaintiff show any outrageous conduct.  For instance, in *Janken*, the California

23   Court of Appeal clearly held that "personnel management decisions [which] are improperly

24   motivated," do not involve outrageous conduct sufficient to support an IIED claim.  *Janken*, 46 Cal.

25   App. 4th at 80.  Instead, the Court of Appeal stated that the proper remedy for such activity "is a suit

26

27         [17] Kasperzyk abandoned any whistleblowing claim he might have had by failing to respond
     to this aspect of SSS's summary judgment motion. *See Newton*, 2014 WL 7183930, at *11 (holding
     that where a party does not "provide any evidence that would be relevant to defeat summary
28   judgment," that party has "conceded [the claim] as a matter of law") (citations omitted).

United States District Court

For the Northern District of California

against the employer for discrimination." *Id.*; *see also id.* ("[P]ersonnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged.").  At least in the absence of some extraordinary circumstances, a claim of employment discrimination does not, in itself, give rise to an IIED claim.  Nor do SSS's alleged breaches of the Union or Lucasfilm contracts support an IIED claim.  Indeed, the California Supreme Court has held that a plaintiff may not recover in tort "for ordinary contract breach." *Freeman & Mills, Inc. v. Belcher Oil Co.*, 900 P. 2d 669, 680 (Cal. 1995).  Thus, Kasperzyk's IIED claim fails as a matter of law.

G.   Civil Conspiracy (Claim 11)

Kasperzyk's final claim is asserted against both SSS and Lucasfilm.  Specifically, Plaintiff claims that SSS and Lucasfilm conspired together to discriminate against him on the basis of his disability, and to breach contractual obligations between SSS and Lucasfilm running in Plaintiff's favor.

As with Plaintiff's IIED claim, the civil conspiracy claim depends on Plaintiff having at least one other viable claim that survives summary judgment.  This is because "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing [a legal wrong] themselves, share with the immediate [wrongdoers] a common plan or design in its perpetration." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 869 P. 2d 454, 457 (Cal. 1994).  As the Supreme Court explained, "[s]tanding alone, a conspiracy does no harm and engenders no [] liability.  It must be activated by the commission of an actual [wrongful act]." *Id.* The relevant claims that have survived summary judgment that can form the basis of civil conspiracy liability here stem from Lucasfilm's and SSS's joint decision not to reinstate Kasperzyk in April 2011.

To prove a civil conspiracy, a Plaintiff must show "the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design." *Doctors' Co. v. Superior Court*, 775 P. 2d 508, 510 (Cal. 1989).  Defendants do not dispute that Kasperzyk can satisfy the damage element, but argue that he cannot prove they agreed to take an adverse employment action against him.  In support of this argument, Lucasfilm and SSS make

**United States District Court**

For the Northern District of California

1    much of Plaintiff's deposition admission that he personally cannot prove that any illicit agreement

2    between the companies was formed, testifying that he was not aware of any agreement to terminate

3    him between any of the Lucasfilm entities and SSS.  Docket No. 92-1 (Kasperzyk Depo. Tr.) at

4    86:17-87-21.  For instance, when asked "are you aware of any agreement between [Lucas Digital

5    Arts] and Shetler to let you go, back in April 2011," the Plaintiff answered "I don't think so."  *Id.* at

6    86:17-20.  This concession, however, is not dispositive.  It is hardly surprising that a line level

7    employee would not have direct knowledge of any such agreement.

8         Plaintiff has presented two pieces of evidence that, when viewed in the light most favorable

9    to him, would allow a reasonable jury to conclude that SSS and Lucasfilm (and more specifically,

10   Tom Dinnaeur and Anders Noyes) conspired to terminate Plaintiff on the basis of his disability.

11   First, Plaintiff has presented evidence that Noyes previously invoked Lucasfilm's veto power in the

12   contract with its security provider (then Advanced-Tech) to constructively terminate five "bad

13   apples" Advance-Tech wanted to get rid of without suffering "union repercussions."  DeFilippo

14   Decl. ¶ 12.  Specifically, Mr. DeFilippo declared that he was present at a meeting in 2009 when the

15   then-Account Manager at Advanced-Tech told Mr. Noyes that he needed to "get rid" of certain

16   minority employees without suffering Union consequences.  *Id.*  According to Mr. DeFilippo,

17   "[w]ithout questioning why it was that Advanced-Tech wanted to fire [the five individuals], Mr.

18   Noyes immediately drafted a letter on the spot to Advanced-Tech indicating that the client no longer

19   wished to have the five working on the campus."  *Id.*  Noyes then handed the letter to the Advanced-

20   Tech supervisor.  *Id.*  Subsequently, all five security officers "were removed" from their positions.

21   *Id.*  Thus, there is evidence that Noyes has previously used his "veto" power for nefarious purposes.

22        Second, and as discussed above, a reasonable jury could find suspicious the timing and

23   sequence of events relative to the April 2011 mediation and termination.  A jury could reasonably

24   infer an understanding was reached between SSS and Noyes to use Noyes's veto power to terminate

25   Plaintiff.

26        Lucasfilm argues in the alternative that even if Plaintiff can prove that it conspired with SSS

27   to terminate Kasperzyk on the basis of his disability, it can not be held liable because it was not

28

United States District Court

For the Northern District of California

1    acting as Plaintiff's joint employer.[18]  *See Weinbaum v. Goldfarb, Whitman & Cohen*, 46 Cal. App.

2    4th 1310, 1315-16 (1996) (holding that "a third party who is *not* (and never was) the plaintiff's

3    employer cannot be liable for conspiracy to wrongfully terminate the plaintiff's employment in

4    violation of public policy") (emphasis in the original).  But even assuming *Weinbaum* would bar all

5    of Plaintiff's conspiracy claims against Lucasfilm if no (joint) employment relationship is found,

6    Lucasfilm is nevertheless not entitled to summary judgment on this ground because Kasperzyk's

7    employment status presents a mixed question of law and fact for the jury to decide.  *See O'Connor v.*

8    *Uber Tech., Inc.*, -- F. Supp. 3d --, No. C-13-3826 EMC, 2015 WL 1069092, at *10-12 (N.D. Cal.

9    Mar. 11, 2015); *see also Cotter v. Lyft*, -- F. Supp. 3d --, No. 13-cv-4065-VC, 2015 WL 1062407, at

10   *8 (N.D. Cal. Mar. 11, 2015).  As this Court explained in great detail in *O'Connor*, California courts

11   have consistently held that a putative employee's employment status "is typically for jury

12   resolution" unless "there is 'but one inference that can reasonably be drawn from the evidence.'"

13   *O'Connor*, 2015 WL 1069092, at *10 (quoting *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*

14   (*Borello*), 769 P.2d 399, 403 (Cal. 1989)) (internal modification omitted).

15           The "most significant consideration" when determining whether a hiree is an employee or

16   independent contractor is the putative employer's "right to control work details."  *Borello*, 769 P.2d

17   at 404.  Here, Lucasfilm argues that it was not Kasperzyk's joint employer because it did not issue

18   Plaintiff any paychecks, or set his rate of pay.  Docket No. 92 at 7.  Lucasfilm also argues that it did

19   not "supervise him" or issue "work rules to him." *Id.*  But at least these last contentions are

20   materially in dispute.  Plaintiff presented evidence that Noyes "kept tight control over day-to-day

21   operations of the security personnel." DeFilippo Decl. ¶ 4.  For instance, Noyes required all security

22   officers to maintain detailed records of their daily activities, which were then submitted to Noyes so

23   that he could determine appropriate staffing levels.  *Id.* at ¶ 5; *see also* DeFilippo Decl., Ex. B.

24   _____

25           [18] There is no dispute that SSS was Kasperzyk's employer, but this does not foreclose a
     finding that Lucasfilm was Plaintiff's joint employer. *See Martinez v. Combs*, 231 P.3d 259, 274
26   (Cal. 2010) (recognizing that California law allows for multiple companies or persons to jointly
     employ a laborer, such as when "multiple entities control different aspects of the employment
27   relationship, as when one entity, which hires and pays workers, places them with other entities that
     supervise their work"); *see also Guerrero v. Super. Ct.*, 213 Cal. App. 4th 912, 918, 926-930 (2013)
28   (same).

**United States District Court**
For the Northern District of California

1  Moreover, Plaintiff presented evidence that Noyes personally approved all hiring and firing

2  decisions, could fire security officers at will, and had control over the hours and postings where

3  security officers worked.  *Id.* at ¶¶ 6-7, 9, 12.  And, of course, Noyes *did* exercise ultimate control

4  over Plaintiff in effecting his termination.  From these facts, a reasonable jury could find that

5  Lucasfilm exercised sufficient control over Kasperzyk's day-to-day job performance to render him

6  Lucasfilm's joint employee.  *See generally Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d

7  981, 983-985 (9th Cir. 2014) (finding employee status as a matter of California law where putative

8  employer significantly controlled work hours and the specifics of the hirees' job performance).  In

9  particular, evidence that Noyes (and thereby Lucasfilm) had the power to terminate Kasperzyk at

10  will is "critical" evidence that could support a finding of an employment relationship.  *See*

11  *O'Connor*, 2015 WL 1069092, at *12; *see also Borello*, 769 P.2d at 404.  Consequently, Lucasfilm

12  is not entitled to summary judgment on the ground that it was not Kasperzyk's joint employer as a

13  matter of law.

14  ### III.   CONCLUSION

15       The Court grants in part SSS's motion for summary judgment.  Specifically, SSS is entitled

16  to summary judgment on Plaintiff's claims 4, 6, 9, and 10.  Summary judgment is denied with

17  respect to all of Plaintiff's other claims.  Lucasfilm's motion for summary judgment is denied.

18       This order disposes of Docket Nos. 92 and 98.

19

20       IT IS SO ORDERED.

21

22  Dated:  March 25, 2015

23

24  EDWARD M. CHEN
   United States District Judge

25

26

27

28